I'm Justin Smith. I represent trooper Englehardt. This is a case about whether an officer may take to the ground a suspected drunk driver who is actively resisting arrest and has already ignored repeated commands from that officer. The district court erred because it concluded that credibility determinations were necessary to resolve Ms. Murphy's claim in this case. Credibility determinations are not necessary because the court can resolve this claim in trooper Englehardt's favor based on the facts alleged by Ms. Murphy. Ms. Murphy argued at summary judgment and on appeal that trooper Englehardt shoved her to the ground. Trooper Englehardt is entitled to qualified immunity based on that allegation because of the undisputed facts that occurred before. Trooper Englehardt stopped Ms. Murphy because she was failing to drive within her lane and when he approached her car he observed that her eyes were bloodshot and glassy so he instructed her to wait in the patrol car while he processed the stop. Ms. Murphy left the car without permission. Seven times Ms. Murphy ignored trooper Englehardt's command to return to the car. Twice she disobeyed his command to turn around and she actively and physically resisted trooper Englehardt's attempt to return her to the vehicle, to turn her around, and to place her arms behind her back. Because she was actively resisting arrest, trooper Englehardt was justified in taking her to the ground and an objectively reasonable officer in the same situation would have believed that was appropriate. Furthermore, it was not clearly established at the time that this type of takedown would violate Ms. Murphy's Fourth Amendment right. Where did the takedown occur? Now this happened, I mean, in terms of where the highway was. This happened at a busy stretch of highway even though it was late at night. Did it happen near the highway? Did it happen, you know, off into the grass? I mean, how close was it to the highway itself? It was on the passenger side of the vehicle on the shoulder of a state highway outside Kansas City about 10 o'clock on a Friday night. Okay, so there's no danger that by doing the takedown she might end up in the middle of a busy oncoming highway, you know, oncoming cars or anything like that? Yes, by the time of the takedown that's correct. Prior to the takedown there was a struggle that occurred closer to the highway when Ms. Murphy was still actively resisting. This court has held in the Ehlers case that the force may be used to effectuate an arrest. In that case a takedown was considered appropriate when the person was passively resisting and had only ignored two verbal commands from the officer. Here we have active resistance and about 10 verbal commands from Trooper Englehart that were ignored. In the Boudet case, which involved a drunk driver, this court found that the officer was justified in removing a drunk driver from a vehicle and using force to complete an arrest. And here we have a suspected drunk driver who, although not in the vehicle, is attempting to return to her vehicle at the time and is ignoring the verbal commands and then begins to actively resist. The reasonableness factors that the Supreme Court has set forth show that Trooper Englehart's actions were reasonable because you have active resistance at the time and there was also the attempt by Ms. Murphy to return to her car at which point. Does Ms. Englehart, does the plaintiff dispute that the officer said when she said, I'm going to my car, he said, you're not free to leave. I'm not done with the traffic stop. Yes, not those exact words, Your Honor. Well, I don't care about the arrest for drunken driving. If it was clear that she was warned, the stop is not over. Yes, Your Honor. So what does she say about that? So in the plaintiff's deposition, and this is at the Joint Appendix 79 and 80, the plaintiff was Ms. Murphy's walk through the video and she recognizes that Trooper Englehart gave her approximately seven commands to stop and that she needed to return to the vehicle. Her testimony is that she... I thought from your brief that his testimony or affidavit, what I haven't looked at the record, was that he said, no, I'm not done. You're not free to leave. You're not free to leave. That's correct, Your Honor. And what does she say about that? She, what she says is that... She doesn't deny that. She does not deny it. She says she claims confusion, that she didn't understand why she needed to stay in his car. Okay, so she does not dispute that he said you're not free to leave. No, Your Honor. So why are we fussing with the arrest? At that point, the detention was clearly valid and all our traffic stop cases make clear that the detention lasts until the stop is completed. Yes, Your Honor. And that means you're not free to leave was an instruction that she was under lawful detention. Correct. And she resisted. She fled that. Correct. The reason that we're discussing the takedown is because that's where the district court's analysis went awry by relying on the Coker case. The Coker case is inapplicable here because it involved a question of... The district court says there was arguable probable cause to arrest. And I say, wait a minute, I don't get there. She was lawfully detained and she fled from detention and refused to return. She refused multiple commands to return to lawful detention. Correct. At that point, all of our cuffing and takedown and so forth meant the sum but not the non-deadly force arrest cases come into play. Correct. They come into play in the clearly established analysis. Why isn't that the focus here? Your Honor, you're exactly right that you can stop the analysis there and find that Trooper Englehart's entitled to qualified immunity at that point. Well, did you argue that with the district court? The argument to the district court was, Your Honor, candidly focused on the takedown, on the excessive force argument. Well, sure, but so every cuffing case is that way. And if you start out with there was a lawful detention command that was resisted, then we come into the forceful arrest category of cases. I don't understand why. I guess you waived that. If you didn't argue it to the district court, why didn't you waive it? Your Honor, if it wasn't argued at the district court, then the analysis would still hold true that Trooper Englehart's entitled to qualified immunity at the time of active resistance and that the takedown was still justified. And you can still proceed through the objective reasonable prong and the clearly established prong, both of which would warrant in Trooper Englehart's favor. Based on the Ehlers case, for purposes of the objective reasonable prong, as well as on the clearly established prong, there's the Smith case we cited in our brief, the Kelsey panel decision, which I understand is being heard later this week on Bonk. And if the court were to reverse the Kelsey panel decision, this case is still distinguishable from Kelsey. It's even more entitled to qualified immunity than that case because that case involved just a single verbal command and did not involve passive resistance. And here, again, we have approximately ten verbal commands to return to the vehicle, to turn around, and there was active resistance at the time the takedown occurred. So regardless of what happens after Friday's on Bonk hearing in Kelsey, Trooper Englehart's still entitled to qualified immunity. And the district court did not get into the clearly established analysis in its opinion. It simply found that credibility determinations needed to be made, which they don't because under just allegations that Ms. Murphy made, this court can find in Trooper Englehart's favor that he's entitled to qualified immunity. Thank you. Thank you. Mr. Nacy? Good. It's still morning. Good morning, Your Honor. Pete Nacy for Ms. Murphy. May it please the court. This case, as the court realizes, is simply, it's focused on the use of force, the level of the use of force. The state, I'm sorry, the defendant argued in the district court as well as in his opening brief that, well, it was a controlled movement to the ground. He put her to the ground. We made our brief and now the state says, well, she was thrown to the ground by the trooper. This is where the district court has a problem. The level of the use of force, whether it was excessive or not, that's the claim. Use of excessive force. So looking at the record, what is it that you think the use of force actually was? I mean, what was the force that was used in your view? Well, of course, that's the part we don't see on the video, but I think it's consistent with what the plaintiff testified to. Which is? He threw her to the ground. Okay, let's presume that he threw her. She denies a leg sweep, right? That's correct. I read it. Correct. And, you know, when we got in the case, we filed an amended complaint that said it was a leg sweep, but the discovery showed that, no, it wasn't really a leg sweep. He tossed her to the floor. So let's presume that that's true and that you still have a lot of facts here that support what the officer did. You have this happening on a busy stretch of highway. You have at least some of the activity taking place relatively close to where cars are passing by. You have resistance, seven commands that are there, and clearly she's not wanting to follow what the officer says. So why wasn't he, in terms of his own safety and her safety, quite frankly, justified in bringing her to the ground rather than having the possibility of this, you know, going into the busy highway or him being heard or whatever the case may be? Well, Your Honor, I saw the video a thousand times. I'm sure you've seen it as well. It shows that she wasn't wanting to be arrested. She didn't want to be stopped. But what we don't see is what he actually did. It's not disputed that a takedown happened. Whether it was required or not, I mean, that's certainly, as you just pointed out, there was a lot of indications that something needed to be done to stop her from doing that. Yeah. Then it becomes a question of, well, what did he do and how much force did he use to do it? That's the part that is at issue here. So if he threw her down to stop to prevent any further altercations, taking it, you know, presuming your client's evidence to be true, I'm still having trouble figuring out how that violated her clearly established rights. Right. Well, and that's the whole point. What's your best case for this level of force violating clearly established law in maintaining control over a resisting person under lawful detention? Well, the best case I've been able to find is the one that the court cited, the Coker case. Admittedly, those are different facts, but it's the best case on point that I've got all things considered, which is not only the force used, but the circumstances requiring such force. Well, you have not only under lawful detention, but it happening on a busy highway. And I understand it was late at night, but nine cars passed during that period while we were on video. So there clearly was a danger to both the officer and to her. And he said he put her down. He put her onto the ground. He did. I think what he. I mean, I think all of us probably would have done something to stop her from from behaving that way. So then it comes down to, did he put her on the ground like you said he did, or did he toss her to the ground? After all, we got this horrific knee injury, you know, evidently the knee hit the pavement. I would say evidently, because we don't have. She says he either need me or fell on me. That doesn't cause the knee injury. That doesn't cause the fractured knee. We don't know. I mean, something caused it. Well, it had to be that the fall fell on the kneecap. And it could very well be his force and kneeing her. Leg sweep versus throwing her down. Makes no difference. I mean, there's no difference. Well, but for his action, she wouldn't have broken her knee. Okay. Yeah. Yeah. Well, that but that that's true in a lot. In all kinds of arrest cases where cuffing or produce or bringing someone under control like Rossard results in greater injury than the arresting officer doubtless contemplated or intended. Agreed, Your Honor. But he's telling one way. One version is which he puts her on the ground. In a controlled movement. He says a leg sweep. That tells me that. I mean, that's that's not gently. That's not a gentle action. Well, he characterizes it as a commonplace modified. Right. Technique. But it's violent. That's the part I think. Not in the world where we're wrestling, I suppose. Right. Amateur or professional. Right. Particularly amateur. I mean, I don't. I watched some amateur wrestling. College and high school. And that's violence. I wouldn't want to take one of those falls either. You know, that's right. But. But his character, I think that's what. Commonplace control device. I think that's what drove the district court's analysis is he saw the way the defendant was putting it. And he saw the way the plaintiff was putting it. And he said, man, this is not the way it happened. I don't see that there's a. In terms of clearly established law, I don't see a difference. Well, then we focus on if that's the case, then we focus on the level of force used. Yeah, that's what that's what. That's what the Supreme Court tells us to do. Well, but. Focus on the level of. Unless you've got real evidence of intent to harm. And typically, 4th Amendment doesn't look at. It's just an objective test. But if there is. If there's real evidence of intent to harm the case, the case changes. I'm not going to. I don't think that's. I don't know. We don't have. I don't think so. In fact, we had a claim for battery, which my opponent correctly pointed out. You have to show some kind of malicious intent. It just didn't. It wasn't there. But but that doesn't get us away from where we were, which is what. What I think the district court was focusing on. And I agree with the district court. Obviously, here I am defending this decision. I don't find myself as a defending party on appeal, but very often. But the court's. Trouble was with the version of the party stories, which is. You know, the Kelsey versus Ernst case is coming up for rearing soon. You know that that that claimant was walking away from the from the defendant who then grabbed her in a bear hug and threw her down on the ground like we have. Well, not like we have here because our our plaintiff wasn't walking away. But either way, the defendant had control of those people and the force used throwing them to the ground is where we had the excessive use of force. And I think a jury can make that decision, whether it was excessive or not. I don't think it's a matter of of law. One of the clearly established prong or otherwise. I think what we have is a jury can make that determination. If a jury hears all these things, the jury could very well say, well, he was justified in doing what he did. Or the jury could say he shouldn't have done that. And I think that's where we are. If any other further questions, I'd be happy to answer. We'll rest on our brief. Thank you. Thank you. Time for about 30 seconds. Very good. Case has been well briefed. Very good. Help us focus the issues and we'll take it on with that.